# United States Court of Appeals
*for the*
# Eighth Circuit

Case No. 25-2905

WOMENS LIFE CARE CENTER, on behalf of itself and its patients; NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, (NIFLA), on behalf of itself, its member clinics whose interests are violated by Minnesota law, and the patients of such member clinics; DAKOTA HOPE CLINIC, on behalf of itself and its patients; DAVID BILLINGS, MD, on behalf of himself and his patients; DAWN SCHREIFELS, MD, on behalf of herself and her patients,

*Plaintiffs-Appellants,*

– v. –

KEITH M. ELLISON, Attorney General, in his official capacity; TIM WALZ, Governor, in his official capacity; SHIREEN GANDHI, Temporary Commissioner, Department of Human Services, in her official capacity; PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA, (PPMNS); PLANNED PARENTHOOD NORTH CENTRAL STATES, (PPNCS); SARAH A. TRAXLER, MD, in her capacity as Medical Director/Chief Medical Officer of PPMNS/PPNCS, and individually;

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM AN ORDER ENTERED IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA, CASE NO. 0:24-CV-04250-NEB,
NANCY ELLEN BRASEL, DISTRICT JUDGE

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

GENE SCHAERR
SCHAERR | JAFFE, LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060

HAROLD C. KNECHT, III
20 Doral Road
Delwood, Minnesota 55110
(651) 303-9303

HAROLD J. CASSIDY
JOSEPH R. ZAKHARY
THOMAS J. VIGGIANO, III
DEREK M. CASSIDY
THE CASSIDY LAW FIRM, LLC
750 Broad Steet, Suite 3
Shrewsbury, New Jersey 07702
(732) 747-3999

*Attorneys for Plaintiffs-Appellants*

CP COUNSEL PRESS (800) 4-APPEAL • (625215)

BROOKE CUNNINGHAM, Commissioner, Department of Health, in her official capacity; PAMELA GIGI CHAWLA, MD, MHA, President, Board of Medical Practice, in her official capacity; RONDA MARIE CHAKOLIS-HASSAN, PharmD, MPH, President, Board of Pharmacy, in her official capacity; ACCESS INDEPENDENT HEALTH SERVICES, INC., doing business as Red River Women's Clinic; KATHRYN L. EGGLESTON, MD, in her capacity as Medical Director of Red River, and individually; JESSICA MIEHE, DNP, RN, President, Board of Nursing, in her official capacity; TIKKI BROWN, Commissioner, Department of Children, Youth, and Families, in her official capacity,

*Defendants-Appellees,*

LAURA ELSETH, LPN, President, Board of Nursing, in her official capacity,

*Defendant.*

## TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| LEGAL ARGUMENT | 1 |
| INTRODUCTION | 1 |
| POINT I | |
| The Merits of Plaintiffs' Claims Under §1983 is Material to All Issues on This Appeal | 1 |
| A. | 1 |
| B. | 3 |
| C. | 5 |
| POINT II | |
| PPMNS, Red River, and Their Medical Directors Are State Actors Acting Under the Color of State Law Within the Meaning of §1983 | 10 |
| A. | 10 |
| B. | 11 |
| 1. Delegation of a State Function | 12 |
| 2. The Abortion Businesses' Conduct With the Aid of the State and Its Officials Constitutes State Action | 14 |
| POINT III | |
| Plaintiffs-Appellants Have Article III Standing | 16 |
| CONCLUSION | 21 |





Appellate Case: 25-2905 Page: 3 Date Filed: 06/12/2026 Entry ID: 5650544

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Brentwood Academy v. Tennessee Secondary School Ath. Assoc.*,
531 U.S. 288 (2001) .......... 11

*Dobbs v. Jackson*,
597 U.S. 215 (2022) .......... 3, 4

*Doe v. Gomez*,
542 N.W.2d 17 (Minn. 1995) .......... 4, 5

*Doe v. Minnesota*,
2022 WL2618040, County of Ramsey, District Court,
No. 62-CV-19-3868 (July 11, 2022) .......... 4

*Edmonsen v. Leesville*,
500 U.S. 614 (1991) .......... 12, 14

*Evans v. Newton*,
382 U.S. 296 (1966) .......... 12, 13

*FDA v. Alliance*,
602 U.S. 367 (2024) .......... 16, 17-18

*Havens Realty v. Coleman*,
455 U.S. 363 (1982) .......... 17

*Johnson v. Zerbst*,
304 U.S. 458 (1938) .......... 8

*Kansas Public Employees Ret. System v. Reimer & Koger Assocs.*,
60 F.3d 1304 (8th Cir. 1995) .......... 19

*Marsh v. Alabama*,
326 U.S. 501 (1946) .......... 12, 13

*Nixon v. Condon*,
286 U.S. 73 (1932) .......... 12, 13

*Norwood v. Harrison*,
413 U.S. 455 (1973) .......... 14

*Planned Parenthood of Minn. v. Citizens for Community Action*,
558 F.2d 861 (8th Cir. 1977) .......... 19



Appellate Case: 25-2905 Page: 4 Date Filed: 06/12/2026 Entry ID: 5650544

*PPMNS, et al. v. Alpha Center, et al.*,
213 Fed. APPX 508 (8th Cir 2007) ........................................................ 19

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022) ................................................................ 12

*SEC v. Flight Transportation Corp.*,
699 F.2d 943 (8th Cir. 1983) ............................................................... 19

*Soldal v. Cook County*,
506 U.S. 56 (1992) ................................................................................ 14

*South Dakota v. Ubbelohde*,
330 F.3d 1014 (8th Cir. 2003) ............................................................. 19

*State v. Merrill*,
450 N.W. 2d 318 (Minn. 1990) ............................................................. 6

*Terry v. Adams*,
345 U.S. 461 (1953) ....................................................................... 12, 13

*U.S. v. Union Electric*,
64 F.3d 1152 (8th Cir. 1995) ............................................................... 19

*U.S. v. Guest*,
383 U.S. 745 (1968) .............................................................................. 14

*West v. Atkins*,
487 U.S. 42 (1988) ........................................................................ 12, 13

*Wyatt v. Cole*,
504 U.S. 158 (1992) .............................................................................. 14

**Statutes & Other Authorities:**

U.S. Const. Amend. XIV ........................................................... *passim*

M.S.A. §147.091 ......................................................................................... 9

M.S.A. §147A.13 ......................................................................................... 9

M.S.A. §148.261 ......................................................................................... 9

M.S.A. §151.071 ......................................................................................... 9

M.S.A. §256B.011 ....................................................................................... 8

M.S.A. §548.252 .......... 9
M.S.A. §604.415 .......... 9
M.S.A. §629.02 .......... 9
M.S.A. §629.05 .......... 9
M.S.A. §629.06 .......... 9
M.S.A. §629.06(b) .......... 8
SDCL §34-23A-1.2 .......... 6
SDCL §34-23A-10.1(1)(b)(c) .......... 7
SDCL §34-23A-10.1(1)(b)(d) .......... 7
SDCL §34-23A-54(3) .......... 7
SDCL §34-23A-54(5) .......... 7
SDCL §34-23A-54-62 .......... 7

## LEGAL ARGUMENT

## INTRODUCTION

Defendants-Appellees mischaracterize Plaintiffs-Appellants' positions, their legal arguments, and relevant facts relating to the merits of plaintiffs' claims, and the Article III and "state action" issues.[1]

Plaintiffs-Appellants provide clarity.

## POINT I

### The Merits of Plaintiffs' Claims Under §1983 is Material to All Issues on This Appeal

### A.

This case involves one of the greatest constitutional violations, involving the deliberate destruction of the most important intrinsic constitutional right a mother has in life. Every day pregnant mothers in Minnesota are losing children they want

[1] Defendants also mischaracterize the relief Plaintiffs seek. Plaintiffs-Appellants seek a judgment declaring Minnesota's abortion laws (as explained herein) violative of the 14th Amendment, and preliminary and permanent injunctions against performance of abortions by the abortion business defendants under the State's current law and state officials from providing them aid. Plaintiffs do ***not*** seek an order compelling the State to pass any statute.



Appellate Case: 25-2905 Page: 7 Date Filed: 06/12/2026 Entry ID: 5650544

and cherish, their parental relationship terminated by the killing of their child by involuntary and uninformed abortions.[2]

The abortion business defendants ("providers") urge this Court to ignore those constitutional violations, erroneously asserting that the killing of Plaintiff PHCs' patients and the destruction of their patients' rights are irrelevant to the Article III and state action issues.

Analysis of the merits claims, state action, and Article III, however, are inextricably connected. The District Court's erroneous holdings concerning Article III standing and state action can be properly resolved only by addressing them in the context of the violations of the rights involved.

The merits issues also relate to plaintiffs' likelihood of success, pertinent to the preliminary injunction.

While the District Court purported *not* to decide the issues relating to the constitutional violations, it discussed them at length and held – remarkably – that a pregnant mother possesses no 14th Amendment parental rights, not even a right to procreate. Order, APP.2844-2850, R.Doc. 225 at 15-21 and n.7,.

[2] *See*, Appellants' Brief at 52-73, addressing the violation of the mothers' 14th Amendment rights by Minnesota law and defendants.

In short, the defendants and the District Court incorrectly assert that the destruction of the mothers' rights, the killing of their children, and the State's authorizing waivers of critical fundamental rights that are neither truly voluntary nor informed, is completely irrelevant to resolution of this appeal.

When *Dobbs* overturned *Roe*, the Court suggested that while the states were no longer *required* to legalize abortion, states may do so on their own. *Dobbs* did **not**, however, hold or suggest that a state was free to violate a mother's 14th Amendment rights in the process. The mother's well-established 14th Amendment rights were not raised or discussed and issues relating to them were not before the *Dobbs* Court.

Now that the holding and teachings of *Roe* have been discarded, the courts must examine the legal and ethical residue left in its wake, especially as it relates to the pregnant mother's true 14th Amendment rights.

**B.**

Plaintiffs-Appellants challenge the provisions of Minnesota's constitution, as construed by its state courts, which deprive pregnant mothers of their Due Process and Equal Protection rights in violation of the 14th Amendment.

Termination of a mother's parental rights by an abortion was illegal in Minnesota until it was forced upon the state by *Roe v. Wade*.



Appellate Case: 25-2905 Page: 9 Date Filed: 06/12/2026 Entry ID: 5650544

In 1995, the Minnesota Supreme Court held the state constitution guaranteed a "right" to an abortion inferring that right from a "right to privacy," which it inferred from Article I, Sections 2, 7, and 10. *Doe v. Gomez*, 542 N.W. 2d.17, 19 (Minn.1995). But neither the "right to privacy" nor the "right" to an abortion are mentioned anywhere in the Minnesota Constitution. A state constitution can violate the 14th Amendment even if the offensive provisions result from court interpretation. *See*, Appellants' Brief, at 87.

In response to *Roe* and *Gomez* imposing legal abortion, the Minnesota legislature passed statutes authorizing only licensed physicians to perform abortions, and minor – but inadequate – protections of the pregnant mother's parental relationship. *See*, Amended Complaint, ¶¶58-64.

*Dobbs v. Jackson*, 597 U.S. 215 (2022) eliminated *Roe's* imposition of legal abortion on the states. Following *Dobbs*, a Minnesota trial court held that all of Minnesota's statutory provisions that provided minor protections of the pregnant mother's interest in her parental relationship violated the Minnesota constitution, and even the statute that criminalized performance of involuntary abortions. *Doe v. Minnesota*, 2022 WL2618040, County of Ramsey, District Court, No. 62-CV-19-3868 (July 11, 2022). *See*, Amended Complaint, ¶¶65-66.



Appellate Case: 25-2905 Page: 10 Date Filed: 06/12/2026 Entry ID: 5650544

In essence, *Doe* held that the power to terminate a pregnant mother's parental rights was delegated to abortion businesses, their doctors and nurses, completely unconstrained by 14th Amendment Due Process and Equal Protection requirements.

The state constitution, as construed, *forbids* all protections of a pregnant mother's constitutional rights relating to her parental relationship, without regard for whether the mother desires to keep her child.

In 2023, the legislature repealed all of the minor statutory protections for the mothers that *Doe* declared violative of the state constitution. *See*, Amended Complaint, ¶¶65-67.

Thus, it is the Minnesota constitution that violates the mother's rights which is the object of plaintiffs' claims.

**C.**

An abortion terminates the existing parental relationship between a pregnant mother and her child. There is no relationship more intimate, more inextricably connected, and more worthy of protection.

"[T]his relationship ... is the touchstone and core of all civilized society. Its denigration is the denigration of the Human Race." South Dakota Concurrent Resolution, 1004, 2015 (App. P.2132 R.Doc 147-28 at 2132).



Appellate Case: 25-2905 Page: 11 Date Filed: 06/12/2026 Entry ID: 5650544

The Supreme Court has explicitly acknowledged that a pregnant mother's existing relationship with her child she carries in utero is constitutionally protected. *See*, Appellants' Brief, at 53-56.

Minnesota's murder statute is intended to protect the pregnant mother's existing relationship with her child. *State v. Merrill*, 450 N.W. 2d. 318, 322 (Minn. 1990); *see*, Appellants' Brief, at 10.

The District Court incorrectly suggested that no one has previously recognized that an abortion terminates the mother's parental relationship. However, South Dakota acknowledged that fact in the strongest terms more than 20 years ago.

In 2005, South Dakota, while passing legislation to protect a pregnant mother's relationship with her child, made certain findings of fact, including that: abortion "terminates the life of a whole, separate, unique, living human being;" there is "an existing relationship" between a pregnant mother and her child throughout gestation; an abortion terminates the mother's "constitutionally protected interest in her relationship with her child;" and there is "a need for special protection of the mother's right to her relationship." SDCL §34-23A-1.2. 1.3, 1.4, 1.5.



Appellate Case: 25-2905 Page: 12 Date Filed: 06/12/2026 Entry ID: 5650544

To advance such protection – while being forced by *Roe* to make abortion legal – South Dakota required PPMNS and its physicians to disclose, before taking a "consent," that the pregnant mother has an existing relationship with her child, that relationship enjoys protection under the United States Constitution, and that an abortion terminates her relationship with her child and her existing constitutional rights to her relationship. SDCL §34-23A-10.1 (1)(b)(c) & (d). *See*, Appellants' Brief, at 19-21; Amended Complaint, ¶¶78-82.

In 2018, South Dakota passed its Anti-Coercion Statute, concluding that only someone other than abortionists could effectively make the necessary disclosures. The legislature found that "there is a need to protect the pregnant mother's interest in her relationship with her child" (SDCL §34-23A-54(3)), and that it is necessary for the State "to give precedence to the mother's fundamental interest in her relationship with her child over the irrevocable method of termination of that relationship by induced abortion" (SDCL §34-23A-54(5).

Throughout, that statute explicitly affirms the existence of the mother's relationship during gestation, and that an abortion is a method of terminating that relationship. SDCL §34-23A-54-62; *see also*, SDCL §34-23A-74-88; Appellants' Brief, at 21; Amended Complaint, ¶¶83-86.



Appellate Case: 25-2905 Page: 13 Date Filed: 06/12/2026 Entry ID: 5650544

Once *Roe* was overturned, South Dakota banned abortion to protect the mother's true 14th Amendment rights. The legislature had previously observed:

> "The right and duty to preserve and protect the cherished relationship between mother and child cannot co-exist with a right and duty to destroy it." Concurrent Resolution, 1004 (2015), (App. P.2132; R.Doc. 147-28 at 6).

Minnesota does the complete opposite, totally disregarding the 14th Amendment's dictates: it gives precedence to abortion over protection of the mother's intrinsic 14th Amendment rights.

Contrary to the dictates of *Johnson v. Zerbst*, 304 U.S. 458 (1938) and its progeny, Minnesota assumes that when a pregnant mother arrives at an abortion facility – whether voluntarily, or at someone else's insistence – she has already made a decision to waive her fundamental rights.

In 2023, Minnesota repealed its statute giving "preference" to "normal childbirth" over abortion. M.S.A. §256B.011, and passed various laws demonstrating its extreme dedication to abortion.

Minnesota now forbids the extradition of a person in Minnesota accused of a crime in another state if that crime is related to abortion. M.S.A. §629.06(b).



Appellate Case: 25-2905 Page: 14 Date Filed: 06/12/2026 Entry ID: 5650544

A physician who loses his license in another state, or is convicted of a crime in connection with the practice of medicine, is denied a medical license in Minnesota unless the offenses relate to performance of abortions. M.S.A. §147.091, Subd. 1C(b); M.S.A. §147A.13, Subd. 1a; M.S.A. §148.261, Subd. 1b.

A licensed pharmacist convicted of a crime in another state cannot be disciplined in Minnesota if the crime is related to abortion. M.S.A. §151.071, Subd. 2b.

Minnesota refuses to honor a subpoena issued to enforce a civil judgment obtained in another state if the violations relate to an abortion. M.S.A. §548.252.

Astonishingly, Minnesota will not extradite a person charged with a crime in another state if the offense relates to an abortion (M.S.A. §629.02;§629.06), even if the person charged breaks out of prison. M.S.A. §629.05.

If a mother obtains a money judgment for the violation of her rights where abortion is illegal, the wrongdoer can bring a lawsuit against the mother in Minnesota, recover the amount of the judgment together with attorneys fees for both lawsuits. M.S.A. §604.415.

It is against that backdrop and in that context of Minnesota's violation of the mothers' rights and its fervor to protect the destruction of those rights, and those who destroy them, that the Article III and State Action issues must be decided.

## POINT II

**PPMNS, Red River, and Their Medical Directors Are State Actors Acting Under the Color of State Law Within the Meaning of §1983**

Defendants PPMNS, Red River, Dr. Traxler and Dr. Eggleston contend, and the District Court erroneously held, that they do not act under the color of state law and are not "state actors."

**A.**

The Abortion Business Defendants solicit what they purport is a "consent," which operates as a waiver of a pregnant mother's fundamental 14th Amendment rights to maintain her parental relationship with her child, her fundamental right to procreate, and her protected interest in her child's welfare.

The defendants then perform a surgical procedure or administer drugs to terminate the mother's existing relationship with her child, which is achieved by killing the mother's child, a murder punishable by mandatory life imprisonment.

Minnesota specifically authorizes, empowers, delegates, and/or compels that conduct based only upon a constitutionally forbidden assumption that the mother's waiver of her fundamental rights is knowing (competent and intelligent), fully informed, and completely voluntary. *See*, Appellants' Brief, at 59-64.



Appellate Case: 25-2905 Page: 16 Date Filed: 06/12/2026 Entry ID: 5650544

The Abortion Defendants only engage in that conduct, and can only do so, because the State of Minnesota expressly empowers them to perform such terminations and dictates the precise manner in which it can be done.

Minnesota limits that power to terminate the mother's relationship to a few it has empowered by issuing medical or nursing licenses. Minnesota immunizes those few from prosecution for murder, even when the killing of the mother's child is outright involuntary. No one else is extended that power or granted that immunity.

**B.**

The United States Supreme Court has identified and listed six kinds of instances that make conduct of private parties "state actors" under §1983: (1) when the private action results from the state's "coercive powers;" (2) when the state provides "significant encouragement, either overt or covert;" (3) when the private actor operates as a "willful participant in joint activity with the state or its agents;" (4) when the private actor is controlled by an "agency of the state;" (5) when the private actor has been delegated a traditional exclusive function of the state; and (6) when the private actor is "entwined with governmental policies" or when government is "entwined in [the] management or control." *Brentwood Academy v. Tennessee Secondary School Ath. Assoc.*, 531 U.S. 288, 296 (2001).

Most of those examples of "state action" by private entities are present in this case.

### 1. Delegation of a State Function

When a state delegates a traditional exclusive state function to a private person or entity, their conduct which fulfills that function constitutes state action. *See, e.g., Terry v. Adams*, 345 U.S. 461 (1953); *Nixon v. Condon*, 286 U.S. 73 (1932); *West v. Atkins*, 487 U.S. 42, 56 (1988); *Marsh v. Alabama*, 326 U.S. 501 (1946); *Edmonsen v. Leesville*, 500 U.S. 614, 627 (1991); *Evans v. Newton*, 382 U.S. 296 (1966); *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924 (8th Cir. 2022).

Termination of a mother's parental rights has traditionally been the exclusive function of the state. Minnesota has employed five separate statutory schemes by which the state has effectuated involuntary and voluntary terminations of a mother's parental relationship with her child. In every instance terminations are achieved only by court order following imposition of Due Process protections. *See*, Appellants' Brief, at 70-73.

Voluntary terminations involve the waiver of a fundamental right. Only the state can accept such a waiver, and only with proper Due Process protections. *See*, Appellants' Brief, at 58-59; 62-63. No private party can legally terminate a



Appellate Case: 25-2905 Page: 18 Date Filed: 06/12/2026 Entry ID: 5650544

relationship between a mother and her child, not a licensed lawyer, and not even a licensed adoption agency.

Neither the District Court nor the defendants deny that termination of a mother's parental relationship is an exclusive state function.

The District Court confused the state function of terminating parental relationships with the method which that termination is accomplished.

The sole purpose of an abortion is the termination of the mother's relationship. The only critical questions are whether the mother has an existing relationship with her child, and whether that relationship is terminated. If the answer to both questions is in the affirmative, the state delegated its exclusive function to the abortionists, regardless of the method of termination employed.

In the state delegation cases of *Nixon*, *West*, *Marsh*, *Terry*, *Evans*, and *Edmonson*, the states delegated a state function, but they did not expressly authorize the specific conduct that violated the constitution.

Minnesota expressly authorizes, empowers, and dictates the method of termination without any Due Process protections. It is a clear constitutional violation for the state to authorize, delegate, or empower conduct that the state itself is forbidden to perform. *Terry v. Adams*, 345 U.S. 461, 469 (1953).



Appellate Case: 25-2905 Page: 19 Date Filed: 06/12/2026 Entry ID: 5650544

### 2. The Abortion Businesses' Conduct With the Aid of the State and Its Officials Constitutes State Action

When private individuals engage in conduct that would violate the 14th Amendment if it was performed by the state and the private conduct is aided by state official, that private conduct is attributable to the state. *See*, Appellants' Brief, at 86-94 (explaining the ways Minnesota officials aid abortion businesses).

In the majority of cases in which the Supreme Court has held that private conduct with the aid of state officials is attributable to the state, the state law did not expressly authorize the conduct in question. Rather, the offensive conduct originated without state sanction or encouragement, and often violated the state law. *See*, *e.g.*, *Norwood v. Harrison*, 413 U.S. 455 (1973) (a private school's racial discrimination constitutes state action when the state merely provided free books without authorizing the unlawful discrimination); *Soldal v. Cook County*, 506 U.S. 56 (1992); (citizen unlawfully seizes another's mobile home, conduct not authorized by state law); *see also, Edmonson v. Leesville Concrete*, 500 U.S. 614 (1991); *Wyatt v. Cole*, 504 U.S. 158 (1992); *U.S. vs. Guest*, 383 U.S. 745 (1968).

In contrast to *Norwood*, in this case Minnesota provides money and far more support to entities which the state expressly authorizes to engage in the very conduct that violates the mother's constitutional rights.

The *only* reason that defendants PPMNS and RRWC engage in involuntary and uninformed terminations of the mother's rights is precisely because the state directs them, empowers them, and expressly tells them they may do so. They would not otherwise engage in the conduct. They commit murder, but can do so because the state immunizes them from prosecution.

Beyond that, it is the state constitution that *compels* and *requires* the state legislature and officials to empower Defendant Abortion Businesses, and forbids providing any Due Process protections, even disclosures designed to help inform the mothers.

"Provider" defendants argue that just because the state licenses a private person doesn't result in his conduct being attributed to the state. It is obvious that just because a state licenses a lawyer, a doctor, or a radio station, does not make all of the conduct of the licensees attributable to the state.

However, in this case, the power to terminate the mother's relationship is given to a designated few – only those they give medical and nursing licenses, and no others. All others are subject to prosecution for murder if they engaged in the killing of the child.

All other conduct of Abortion Defendants' doctors and nurses – other than the empowered terminations – performed by the defendants is not attributable to

the state, as is none of the conduct of licensed physicians and nurses who do not perform terminations by abortion.

## POINT III

### Plaintiffs-Appellants Have Article III Standing

Defendant-Appellees rely heavily upon *FDA v. Alliance*, 602 U.S. 367 (2024), to argue that plaintiffs lack Article III standing, going so far as to claim "*Alliance* resolves this case." *Alliance* has no application to this case at all.

In *Alliance*, physicians challenged FDA protocol for administration of mifepristane, used in medical abortions. They argue that the FDA protocol made incomplete abortions more likely, and they *might* have to treat the women and complete an abortion which would violate their conscience.

The *Alliance* plaintiffs *never* participated in abortions. Instead, *Alliance* plaintiffs expressed *fear* that one day they *may* have to treat a woman in an emergency room and "complete" an abortion. The court pointed out that under the law they were free to refuse to provide such treatment, and they could not be punished for such refusal. *Alliance* plaintiffs suffered no injury at all.

In contrast, Plaintiff PHCs and their medical directors assist and treat their pregnant mother patients every day, mothers whose rights are threatened.

Plaintiff PHCs' sole purpose is to provide pregnant mothers the help, support, education, and counseling they need to exercise their rights to keep their children. PPMNS, and RRWC, with the aid of state officials, aggressively seek to maximize the number of mothers whose relationship are terminated, causing five concrete injuries to plaintiffs. *See*, Appellants' Brief, P.79-82.

Most of Plaintiff PHCs' patients are either "abortion vulnerable" or "abortion minded," usually because they are being pressured or coerced by others. Most of those mothers – because of the help from the PHCs – get to keep their children, Many, however, lose their children, when Plaintiff PHCs' patients are taken to abortion facilities, or are prevented from receiving the PHCs' help in the first place, because Minnesota's refusal to provide Due Process protections results in the mothers being taken to PPMNS/PPNCS, and RRWC, who lie to the mothers and contradict and defame the PHCs. The mothers lose their children. As a result, the PHCs' mission is destroyed or impaired, a concrete injury to plaintiffs. *Havens Realty v. Coleman*, 455 U.S. 363, 372-378 (1982).

Defendants argue that because Minnesota does not regulate the PHCs they have no injury. However, when a state regulates individuals, third-parties can suffer injury therefrom. *Alliance* cites six examples. *Alliance*, 602 U.S., at 384-



Appellate Case: 25-2905 Page: 23 Date Filed: 06/12/2026 Entry ID: 5650544

385. The Supreme Court points out that even "under-regulation" of another can cause injury to third-parties.

However, in this case, the major problem is that there is no regulation of any kind of anyone. In fact, injury to plaintiffs and their patients derive, not from what is prohibited, but from what is expressly empowered without *any* regulation. Minnesota delegates and empowers the abortion businesses to destroy the mothers' rights by law that forbids all regulation and restrictions. That lack of Due Process protections violates the mothers' rights and inflicts injury on Plaintiff PHCs and their physicians.

Minnesota's delegation of the destruction of the mothers' relationship to the Abortion Defendants, requires PHCs to expend extraordinary time and resources assisting the mothers to resist the loss of their child. If Minnesota's abortion laws didn't exist, all of PHCs' efforts and resources would be reserved to provide positive help to the mothers, not directing resources to help them ward off the pressure from others to submit to an abortion, and provide post-abortion counseling services, which drain PHCs' resources.

In fact, the best way to protect the mothers' rights and to minimize the PHCs' losses is for plaintiffs to win this case, which will best discharge PHCs' duties to the mothers, eliminate plaintiffs' losses, and preserve the mothers' rights.



Appellate Case: 25-2905 Page: 24 Date Filed: 06/12/2026 Entry ID: 5650544

This Court held that if an interest will be preserved or advanced by a favorable outcome of the litigation, that benefit constitutes a concrete interest that supports Article III standing. *SEC v. Flight Transportation Corp.*, 699 F.2d 943, 947-948 (8th Cir. 1983). *See also*, *Planned Parenthood of Minn. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977); *U.S. v. Union Electric*, 64 F.3d 1152, 1161-1162 (8th Cir. 1995); *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024-25 (8th Cir. 2003); *Kansas Public Employees Ret. System*, 60 F.3d 1304, 1307 (8th Cir. 1995).

If Plaintiff PHCs succeed in this case, the number of pregnant mothers who seek their assistance would increase and advance their mission. That will happen whether the law is stricken without being replaced, or whether it is replaced by law that requires the mothers to receive counseling the PHCs provide.

Among other things, the PHCs instruct the mothers about their rights and the nature of the procedure that terminates the life of their children. Precisely because PHC's provide that kind of counseling, the state officials (*e.g.* Ellison) and Planned Parenthood claim PHCs "lie" and the mothers should not go to them. Damage to the PHCs' reputation was one of the injuries identified by this Court giving the PHCs in *Rounds* Article III standing. *See*, *PPMNS, et al. v. Alpha Center, et al.,* 213 Fed. APPX 508, 510 (8th Cir 2007).



Appellate Case: 25-2905 Page: 25 Date Filed: 06/12/2026 Entry ID: 5650544

Because of Minnesota's laws, pregnant mothers being pressured or coerced into an abortion, and mothers who are ambivalent who are administered mifepristone seek progesterone treatment, Dr. Billings must provide progesterone treatment to the mothers who seek his help.

Because of the abortion laws, PHCs need greater financial resources, and abortion laws often negatively impact their ability to obtain financial resources.

Minnesota does not require the abortion facilities to advise the mothers where to obtain help to keep their children, even for the mothers who expressly request the information. The PHC Plaintiffs have an interest in obtaining those referrals which they lose because of the law's lack of protections.



Appellate Case: 25-2905 Page: 26 Date Filed: 06/12/2026 Entry ID: 5650544

## CONCLUSION

The District Court's order dismissing the complaint must be reversed, the order of dismissal vacated, and the matter remanded with instruction to enter a preliminary injunction enjoining defendants from performing abortions under the current Minnesota law.

Dated: June 12, 2026


*s/ Harold J. Cassidy*
Harold J. Cassidy
Joseph R. Zakhary
Thomas J. Viggiano, III
Derek M. Cassidy
THE CASSIDY LAW FIRM, LLC
Attorneys for Appellants-Plaintiffs
750 Broad Street, Suite 3
Shrewsbury, NJ 07702
Tel: (732) 747-3999
hjc@haroldcassidy.com

Schaerr | Jaffe LLP
Gene Schaerr
1717 K Street, NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
gschaerr@schaerr-jaffee.com

Harold C. Knecht, III
20 Doral Road
Delwood, MN 55110
(651) 303-9303
mallorygrp@comcast.net

*Attorneys for Plaintiffs-Appellants*

## Certificate of Compliance

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Eighth Circuit Local Rules because this document contains 3,883 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman type.

Dated: June 12, 2026

/s/ Harold J. Cassidy
Harold J. Cassidy
*Attorney for Appellants*



Appellate Case: 25-2905 Page: 28 Date Filed: 06/12/2026 Entry ID: 5650544

**Circuit Rule 28A(h) Certification**

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

/s/ Harold J. Cassidy
Harold J. Cassidy
*Attorney for Appellants*



Appellate Case: 25-2905 Page: 29 Date Filed: 06/12/2026 Entry ID: 5650544

**Certificate of Service**

The undersigned hereby certifies that on June 12, 2026, an electronic copy of the Reply Brief of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all participants in this case are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system.

/s/ Harold J. Cassidy
Harold J. Cassidy
*Attorney for Appellants*



Appellate Case: 25-2905 Page: 30 Date Filed: 06/12/2026 Entry ID: 5650544